FILED
COURT OF APPEALS
DIVISION II

2015 JUL 28 AM 8:25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45876-4-II |
| Respondent, | |
| v. | |
| MAHDI ELISAH SHARRIEFF, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Mahdi Sharrieff challenges his convictions as an accomplice for trafficking in stolen property in the first degree and theft in the first degree. We hold that (1) testimony by a police officer did not impermissibly comment on Sharrieff's right to remain silent, (2) Sharrieff waived his claim of prosecutorial misconduct by failing to object to the prosecutor's reference to facts not in evidence during closing argument, (3) the trial court did not err in including Sharrieff's past conviction for second degree taking a motor vehicle without permission in his offender score, and (4) Sharrieff's statement of additional grounds (SAG) contentions have no merit. However, the trial court made a scrivener's error by stating an incorrect offender score in the judgment and sentence, even though the sentence was based on the correct offender score.

Accordingly, we affirm Sharrieff's convictions but remand for correction of a scrivener's error in the judgment and sentence regarding Sharrieff's offender score.

FACTS

In June 2013, Sharrieff and Joseph Warren walked into a camera store in Lakewood. The store's video footage showed the pair speaking with the store clerk about various cameras. Sharrieff stated that he had to get something out of the car and left the store. A few minutes later, Warren grabbed two cameras when the clerk was not looking and ran out of the store with the cameras. The clerk chased him, but did not see either Warren or Sharrieff outside the store.

Tod Wolf, the store owner/manager, monitored Craigslist to see if the stolen cameras were posted on the website. He spotted two cameras that he suspected were the stolen property. Wolf contacted the police and was instructed to arrange a meeting with the seller, which the police would attend rather than Wolf. Wolf contacted the seller, who he later identified as Warren, and arranged to meet at a McDonald's restaurant at a particular time.

At the time of the arranged meeting, one police officer was positioned inside the McDonald's, while other police officers sat in unmarked cars around the restaurant. The seller did not arrive on time, so an officer – through Wolf – arranged to meet the seller outside the McDonald's.

While they waited for the meeting, several police officers saw Sharrieff walk toward the McDonald's and recognized him as one of the individuals depicted in the surveillance video. Sharrieff entered the McDonald's and walked to the counter. The police then detained him and moved him outside. The officers positively identified Sharrieff as one of the suspects by comparing him to a figure shown in surveillance photos. Sharrieff stated, "You don't have me on video stealing any cameras." Report of Proceedings (RP) at 495. The officers arrested Sharrieff and informed him of his right to remain silent.

A short while later the police observed Nina Ricketts in the driver's seat and Warren in the back seat of a parked car near the McDonald's. The front passenger seat was empty. When Ricketts and Warren spotted a police officer, Ricketts began to pull out of their parking spot. Warren ducked down in his seat. The police stopped the car. While speaking with Ricketts and Warren, the police noticed that Warren was attempting to conceal two cameras on the floor of the car. After arresting Warren and Ricketts, the police obtained a search warrant for the car and found the stolen cameras.

Sharrieff was charged as an accomplice to trafficking in stolen property in the first degree and theft in the first degree. Sharrieff testified at a CrR 3.5 hearing regarding the admissibility of the statement he made that there was no video of him stealing cameras. Sharrieff testified that he had a social relationship with Ricketts and that she owned the car that she was driving when Warren was apprehended.

At trial, the prosecutor asked Officer Henson, one of the officers who detained Sharrieff, if he was present for any statements Sharrieff made. Henson replied, "He made a few little statements. I'm not sure about the statement that he made. He essentially said that he didn't have anything to say to us." RP at 339. Sharrieff did not object to or move to strike this testimony. The prosecutor stated outside the presence of the jury that he did not intentionally introduce testimony that Sharrieff did not have anything more to say to the officers.

Henson also testified that he and another officer interviewed both Warren and Ricketts. Then on a second occasion, another officer testified that he assisted with the investigation "while Henson and Martin conducted interviews." RP at 409. The officer also mentioned that he downloaded the interviews onto DVDs (digital video disks) and booked them into evidence.

3

Defense counsel objected to this testimony on the grounds that the prosecutor was eliciting testimony that indirectly referenced Sharrieff's exercise of his right to remain silent. The court overruled the objection, reasoning that the jury would be instructed that they could not use Sharrieff's exercise of his right to remain silent against him.

In closing argument, the prosecutor argued:

> The circumstances are pretty damning in this case. I mean, Mr. Sharrieff – there's an empty front passenger seat in the Mazda. Mr. Sharrieff we know is acquainted with Mr. Warren because we've seen them together in the video. We're told that Mr. Sharrieff has a relationship of some type with Ms. Ricketts, who's apparently the owner of this vehicle though it may actually be in someone else's name. He's the only one that got hungry?

RP at 639.

The prosecutor also referred to Sharrieff's relationship with Ricketts in his rebuttal argument:

> [W]e also know that Ms. Ricketts relationship with the defendant, the empty front passenger seat, Mr. Warren sitting in the back seat, we know that they arrived there together. Is that because of circumstantial evidence? Yes. But that's sufficient evidence to reach that conclusion without any doubts whatsoever.

RP at 655. However, the State had presented no evidence at trial that Sharrieff had a relationship with Ricketts or that Ricketts owned the car she was driving. Defense counsel for Sharrieff did not object to either of these statements.

The jury found Sharrieff guilty of trafficking in stolen property in the first degree and theft in the first degree. At sentencing, the State contended that Sharrieff had a prior conviction for second degree taking of a motor vehicle without permission. The only evidence of this conviction in the appellate record is a disposition form showing that Sharrieff pled guilty to attempted taking of a motor vehicle without permission. However, a transcript of the sentencing

4

hearing establishes that the State provided to the trial court the actual order of disposition for the conviction, which shows that Sharrieff pled guilty to the completed crime.

The trial court also concluded that Sharrieff had an offender score of 8, and sentenced him based on that offender score. However, the judgment and sentence incorrectly stated the offender score as 9.

Sharrieff appeals.

## ANALYSIS

A.    COMMENT ON RIGHT TO REMAIN SILENT

Sharrieff argues that Officer Henson's testimony was a direct comment on Sharrieff's right to remain silent and therefore violated his right against self-incrimination. We disagree.

### 1.    Legal Principles

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence. *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). We liberally construe a defendant's constitutional right to remain silent. *See State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996).

Our Supreme Court has distinguished between a "comment" on the constitutional right to remain silent and a "mere reference" to silence. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008). A "comment" involves the State's use of a defendant's silence to its advantage either as substantive evidence of guilt or to invite an inference that the defendant's silence was an

admission of guilt. *Id.* at 217; *see also State v. Lewis,* 130 Wn.2d 700, 707, 927 P.2d 235 (1996). Such a comment violates the United States and Washington constitutions. *Burke,* 163 Wn.2d at 217.

Conversely, a "mere reference" is a statement that only indirectly refers to a defendant's silence. *See State v. Pottorff,* 138 Wn. App. 343, 347, 156 P.3d 955 (2007). Such a statement will not be considered a comment on the right to remain silent if it was " 'so subtle and so brief' " that it did not necessarily emphasize the defendant's silence. *Burke,* 163 Wn.2d at 216 (quoting *State v. Crawford,* 21 Wn. App. 146, 152, 584 P.2d 442 (1978)). A mere reference to silence is not a constitutional violation unless the defendant shows some prejudice. *Burke,* 163 Wn.2d at 216.

2. Analysis

In response to the prosecutor's questioning, Henson testified that, "[Sharrieff] made a few little statements. I'm not sure about the statement that he made. He essentially said that he didn't have anything to say to us." RP at 339. We hold that Henson's statement was a mere reference to Sharrieff's silence. First, the State did not deliberately elicit a statement that touched on Sharrieff's silence. The prosecutor emphasized outside the presence of the jury that he did not intend to elicit any testimony regarding Sharrieff's failure to answer questions, and that Officer Henson's answer was inadvertent.[1]

---

[1] It appears that the prosecutor was attempting to elicit testimony regarding the spontaneous statement that Sharrieff made to the police that they did not have him on video stealing cameras.

Second, the State did not attempt to use Officer Henson's testimony to its advantage. The State did not ask the jury to use the statement as substantive evidence of guilt or to infer an admission of guilt. In fact, the prosecutor never mentioned the statement again.

Third, Officer Henson's testimony was very subtle and very brief. Henson's statement that Sharrieff "essentially said that he didn't have anything to say to us" came after he stated that Sharrieff had made "a few little statements." RP at 339. The jury would not necessarily have interpreted the testimony as a comment on Sharrieff's silence.

A mere reference to a defendant's silence is not constitutional error unless a defendant shows prejudice. *Burke*, 163 Wn.2d at 216. Here, Sharrieff fails to show that he was prejudiced by Henson's reference to his silence. There is no witness testimony or argument by the prosecutor in the record to imply that the jury could infer Sharrieff's guilt from his silence. And as our Supreme Court stated in *Lewis*, "[m]ost jurors know that an accused has a right to remain silent and, absent any statement to the contrary by the prosecutor, would probably derive no implication of guilt from a defendant's silence." 130 Wn.2d at 706.

We hold that Henson's testimony was a mere reference to Sharrieff's silence, and Sharrieff has failed to demonstrate prejudice from that testimony. Therefore, we hold that the State did not violate Sharrieff's right to remain silent.[2]

---

[2] Sharrieff also argues that witness testimony regarding police interviews with Ricketts and Warren was an indirect comment on his right to remain silent. However, Sharrieff cited no cases standing for the principle that a mere reference to a co-perpetrator's interview constituted a comment on a *different co-perpetrator's* right to remain silent. We hold that this argument has no merit.

7

B.     PROSECUTORIAL MISCONDUCT

Sharrieff argues that the prosecutor committed misconduct by arguing facts not in evidence in his closing argument – Sharrieff's relationship to Ricketts. Sharrieff contends that without the reference to this relationship, the State would have been unable to connect Sharrieff to the car where the stolen property was located. Moreover, Sharrieff argues that the prosecutor – by asking, "He's the only one that got hungry?" – implied that Sharrieff admitted to being with Warren and Ricketts. Br. of Appellant at 19. We hold that Sharrieff waived his right to claim prosecutorial misconduct by failing to object to the statements below.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We analyze the prosecutor's conduct and whether prejudice resulted therefrom based on the full trial context including the evidence presented, the issues in the case, the prosecutor's total argument, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

However, a defendant waives any error by failing to object to the prosecutor's improper conduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61. In assessing whether a failure to object should operate as a waiver, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. Therefore, to avoid waiver the defendant must show that no curative instruction would have

eliminated the prejudicial effect of the prosecutor's conduct. *Id.* at 760-61. This is the case only where the misconduct "engendered an incurable feeling of prejudice in the mind of the jury." *Id.* at 762.

Here, the prosecutor did state that Sharrieff and Ricketts had a relationship, which was not in the record. However, Sharrieff did not object below to that portion of the prosecutor's argument. If Sharrieff had objected, the trial court could have struck the prosecutor's arguments from the record and instructed the jury to disregard any arguments that the evidence did not support. This would have cured any possible prejudice.

Further, Sharrieff's claim that this statement prejudiced him because this relationship was all that connected him to the car has no merit. Warren was in the car, and the State knew that Warren and Sharrieff had gone into the camera store together. This evidence connected Sharrieff to the car, regardless of whether he had any relationship with Ricketts. This failure to show prejudice precludes Sharrieff's claim of prosecutor misconduct. Therefore, we hold that Sheriff waived his right to claim misconduct on the basis of these statements.

We reject Sharrieff's prosecutorial misconduct claim.

C.    OFFENDER SCORE CALCULATION

Sharrieff argues that the trial court erred by including his past conviction for taking a motor vehicle without permission in his offender score. He argues that the evidence shows that this conviction was for *attempted* taking of a motor vehicle without permission, which is a gross misdemeanor that cannot be included in the offender score. We disagree because the State provided evidence at sentencing showing that the conviction was for the completed crime, which is a felony that must be included in the offender score.

A trial court's sentence following a conviction depends on a defendant's offender score, which is calculated based on the defendant's current offenses and prior convictions. RCW 9.94A.525, .530. Generally, only felonies can be included in an offender score. RCW 9.94A.525(2). We review a sentencing court's calculation of an offender score de novo. *State v. Hernandez*, 185 Wn. App. 680, 684, 342 P.3d 820 (2015).

In order to establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence. Former RCW 9.94A.500(1) (2008);[3] *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The best evidence of a prior conviction is a certified copy of the judgment, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior convictions. *Hunley*, 175 Wn.2d at 910-11 (listing with approval cases discussing other sufficient evidence to prove a prior conviction).

Here, the State's sentencing memorandum asserted that Sharrieff had been convicted of taking a motor vehicle without permission, which is a class C felony if the crime is charged in the second degree. RCW 9A.56.075(2). The only direct evidence of this conviction in the appellate record is a disposition form showing that Sharrieff pled guilty to *attempted* taking of a motor vehicle without permission. Under RCW 9A.28.020(3)(d), an *attempted* class C felony is a gross misdemeanor.

However, the transcript of the sentencing hearing shows that the State provided the trial court with the disposition order of his conviction, which shows that Sharrieff pled guilty to the

---

[3] RCW 9.94A.500 was amended in 2014. However, this amendment does not affect the subsection cited. LAWS OF 2013, ch. 200, § 33.

completed crime of taking a motor vehicle without permission in the second degree. The State provided a copy of this order as an appendix to its brief. The completed crime of taking a vehicle without permission in the second degree is a felony. RCW 9A.56.075(2). Therefore, that conviction was required to be included in Sharrieff's offender score.

We hold that the preponderance of the evidence shows that Sharrieff was convicted of taking a motor vehicle without permission in the second degree, a felony. Therefore, we hold that the trial court did not err in including this conviction in Sharrieff's offender score.

D.    SCRIVENER'S ERROR

Sharrieff argues, and the State concedes, that the trial court mistakenly stated Sharrieff's offender score as 9 instead of 8 in the judgment and sentence. We agree.

The trial court concluded during sentencing that Sharrieff's offender score was 8 and sentenced him based on that offender score. However, the judgment and sentence incorrectly states an offender score of 9. We remand for the trial court to correct the scrivener's error.

E.    SAG ASSERTIONS

Sharrieff's SAG argues (1) the State presented insufficient evidence to convict him as an accomplice, and (2) the court erred by including a point in his offender score that encompassed the same criminal conduct as another offense. We hold that neither of these claims has merit.

1.    Sufficiency of Evidence to Prove Accomplice Liability

Sharrieff contends that the evidence is insufficient to prove the knowledge element of accomplice liability. Specifically he contends that there was no evidence linking him to the offenses. We disagree.

a. Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In evaluating a sufficiency of the evidence claim, we assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We consider direct and circumstantial evidence equally reliable in weighing sufficiency of the evidence. *City of Seattle v. Meah*, 165 Wn. App. 453, 456, 267 P.3d 536 (2011). We defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

b. Accomplice Liability

To prove that Sharrieff was an accomplice to the theft and trafficking of the stolen property, the State needed to show that he knowingly promoted or facilitated the commission of these crimes (1) by soliciting, commanding, encouraging, or requesting another person to commit the crimes; or (2) by aiding or agreeing to aid another in the planning or committing of the crimes. RCW 9A.08.020(3)(a)(i)-(ii). A person aids or abets a crime by associating himself with the undertaking, participating in it as in something he desires to bring about, and seeking by his action to make it succeed. *State v. Knight*, 176 Wn. App. 936, 949, 309 P.3d 776 (2013), *review denied*, 179 Wn.2d 1021 (2014). A person's physical presence during the offense is not required for accomplice liability. *Id.*

Here, there is some evidence that allowed the jury to rationally infer that Sharrieff facilitated the theft of the cameras and subsequent trafficking of the cameras by giving Warren aid in the commission of those crimes. The State presented evidence that Sharrieff arrived with Warren at the camera store and actively engaged the clerk in conversation. From this the jury could reasonably infer that Sharrieff must have known that his conversation with the clerk would put the clerk at ease and facilitate Warren's opportunity to grab the cameras a short time later. Similarly, the jury was presented with evidence that Sharrieff arrived at the McDonald's shortly after the seller of the camera was meant to arrive, and that he blurted out, "You don't have me on video stealing any cameras" when detained. RP at 495. This evidence allowed the jury to reasonably conclude that Sharrieff knew the sale of the cameras would be at that location and that he was aiding Warren in making the sale. Lulling the clerk into a false sense of security and attempting to interact with the potential buyers of stolen goods both fall within the meaning of "aid" in the accomplice liability statute. RCW 9A.08.020(3)(a)(ii).

Sharrieff argues that his mere presence, even with knowledge of the crimes, was insufficient to prove accomplice liability. He is correct that the mere presence of the defendant without aiding the principal – despite knowledge of the ongoing criminal activity – is not sufficient to establish accomplice liability. *State v. Truong*, 168 Wn. App. 529, 540, 277 P.3d 74 (2012). However, as discussed above, here the State presented the jury with more than just Sharrieff's presence: it presented the jury with evidence of Sharrieff's conversation with the clerk, his arrival at the place of the purported sale at McDonald's, and his unprovoked statement at the time of his detainment. This circumstantial evidence was sufficient to show Sharrieff's

45876-4-II

knowledge and actions to aid in the commission of the crimes sufficient to allow a rational jury to convict him as an accomplice.

We hold that the State presented sufficient evidence of accomplice liability for Sharrieff's theft and trafficking of the stolen property convictions.

2.  Same Criminal Conduct

Sharrieff argues that the trial court erred in counting his 2006 theft and second degree assault convictions separately in calculating his offender score, contending that they arose from one single incident. We disagree.

For crimes to be treated as the same criminal conduct under RCW 9.94A.589(1)(a), they must have the same criminal intent, be committed at the same time and place, and involve the same victim. *State v. Davis*, 174 Wn. App. 623, 641, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013). Here, the record shows that Sharrieff committed theft and second degree assault on the same date in 2006. However, there is insufficient direct evidence in the record to determine whether these two crimes involved the same criminal intent, were committed at the same time, or involved the same victim.[4] Therefore, this claim relies, at least in part, on facts outside the record. We do not address issues on direct appeal that rely on facts outside the record. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). They are more properly raised in a personal restraint petition. *Id.*

---

[4] The State's sentencing memorandum and the amended information for the original offenses state that these crimes involved a different victim, but there is no evidence in the record of this fact.

14

CONCLUSION

We affirm Sharrieff's convictions, but remand for correction of a scrivener's error in the judgment and sentence regarding Sharrieff's offender score.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.

15